## Grace Heise, Appellee, v. Sears, Roebuck & Company, Appellant.

### Gen. No. 15,030.

VERDICTS—*when set aside as against the evidence.* A verdict will be set aside on review where the same is clearly and manifestly against the weight of the evidence.

Action in case for personal injuries. Appeal from the Superior Court of Cook county; the Hon. GEORGE A. DUPUY, Judge, presiding. Heard in this court at the October term, 1908. Reversed and remanded. Opinion filed May 2, 1910. Rehearing denied May 16, 1910.

LACKNER, BUTZ & MILLER, and W. G. SHOCKEY, for appellant.

HORTON & MILLER, for appellee.

MR. JUSTICE FREEMAN delivered the opinion of the court.

Appellee recovered a judgment of $3,000 against appellant in the Superior Court for personal injuries. The injury complained of was caused by the fall of a wire basket from a carrier system used to carry mail in defendant's place of business. Plaintiff was in the defendant's employ and was sitting at a table addressing mail when the the accident occurred. One of the main wires of the carrier system ran above this table and the basket which fell from this overhead wire struck appellee a glancing blow on the right side of the head about three inches above the ear. The external injury was not apparently severe. She received a "slight cut" on the side of the head when the basket struck her, and says that some blood flowed from the cut, but "not very much". Others present at the time "did not notice any blood on her head". Her mother says that "her head was cut a little and the whole side of her head was bruised". Appellee returned to her work four days after the accident, but she says

Heise v. Sears, Roebuck & Co., 154 Ill. App. 646.

she could not work, soon went home and did not return to work again for three or four days afterwards. Some weeks later she left defendant's employ and has been compelled it is claimed to take long vacations owing to nervous and hysterical conditions, which it is claimed in her behalf were caused by this accident. There is evidence tending to show that immediately after the accident plaintiff "acted rather hysterical, laughed and cried."

It is contended among other things in defendant's behalf, that the verdict is against the weight of the evidence, and that the verdict and judgment are excessive.    Upon the 24th of January, 1905, about a month prior to this accident of February 20, 1905, now in controversy, plaintiff was struck and knocked down by a street car. She was standing on the corner and the rear end of the car swung out in going around a curve and struck her, making a black and blue spot on her arm. The street car company settled with her by paying twenty dollars, as she testifies, for "expenses and medical attendance while I was at home." She remained at home about a week and a half after the street car accident, and says that during that time she had some dental work done. One of the medical witnesses called in plaintiff's behalf testified that such prior accident if followed by nervous symptoms could be, as well as the last accident, the cause of the nervous and hysterical conditions which are, it is claimed, more than any direct injury inflicted by the blow, the worst consequences resulting from the accident. This witness stated he "could not say which of the two accidents would cause the nervous condition in a person susceptible to nervousness without going into the case more fully, because there are other elements than the actual injury, such elements as fear coming into these cases in which a very slight injury will do more than a larger one", and that in his "opinion it was the fright and not the injury that caused the nervous conditions. One doesn't know", he says, "whether a

glancing blow upon the head, leaving no injury that showed more than a couple of days, would produce any nervousness." There is evidence tending to show that the street car accident was the more severe. An affidavit by plaintiff dated January 12, 1905, was introduced in evidence, in which she stated that the street car which swung around and struck her, "knocked me down and I was rendered unconscious," and that she "received a sprained right arm." This affidavit was made more than a month before the accident now in controversy, which, as above stated, occurred February 20, 1905. In behalf of defendant there is testimony tending to show that she told a physician whom she called upon and who has made a specialty "of internal medicine and nervous diseases," that she had trouble with her left ear, not the right ear, before the accident now in question. She now claims that the trouble was in her right ear and occurred since the accident and by reason thereof. This medical witness says that "it always requires time to develop an hysterical and nervous condition. It is usually due to a mental effect upon the patient and the mental effect upon the patient is not carried instantaneously; that is, an accident occurs and then there is a certain period of time during which the patient broods over the accident and during that period of time, which usually lasts from 24 to 28 hours, sometimes gradually becomes more and more pronounced; that when hysterical conditions are manifested immediately upon an injury I would say the hysterical condition was there before the accident, and that the accident probably emphasized the condition. If a person is in an hysterical condition a little fright of any kind will bring on hysteria." This witness expressed the opinion that "assuming that Miss Heise's hysterical manifestations were genuine, that she could not have them unless she was hysterical before."

There is considerable testimony by plaintiff's fellow employes, who worked with her in the same room, to

the effect that she was nervous before the accident in question. One witness states that she "always used to cry when she made an error and the error was brought back to her," that this occurred "both before and after the basket fell," and that she exhibited nervousness by "an involuntary twitching of the muscles of her face." Others noticed her crying before the accident; that she "was odd and nervous and attracted people's attention in that way," and state they "did not notice any difference in her appearance after the accident from what it was before the accident." The evidence tending to show that the nervous symptoms complained of were manifest before the accident complained of and were not the result of it, greatly preponderates. Inasmuch as the issues must be submitted to another trial, we refrain from a more detailed discussion of the evidence, and of other questions presented in the briefs.

For reasons indicated the judgment of the Superior Court will be reversed and the cause remanded.

*Reversed and remanded.*